

# THE ATTORNEY GENERAL
# OF TEXAS

**AUSTIN 11, TEXAS**

GERALD C. MANN
XX~~XXXXXXXXXXXXXXXXX~~XXXXXXX
ATTORNEY GENERAL

Honorable Olin Culberson, Commissioner
Railroad Commission of Texas
Austin, Texas

Dear Sir:

Opinion No. 0-5008
Re: Allocation of gas allowables a-
mong operators in gas fields
under Article 6008, Vernon's
Annotated Civil Statutes.

        This is in response to the request contained in
your letter of December 10, 1942, for the opinion of this
department upon the following question:

> "Please advise whether or not the Rail-
> road Commission is legally required or authorized,
> when the aggregate lawful volume of the open flow
> or daily potential capacity to produce of all wells
> located in a common reservoir producing only sweet
> gas, is in excess of the daily reasonable market
> demand for gas from such common reservoir, to re-
> strict the withdrawals from such common reservoir
> to the amount of the reasonable market demand there-
> for and whether or not, in order to adjust correlative
> rights, the Commission is required to allocate to
> <u>each gas well</u> producing gas from such common reser-
> voir a percentage of the daily productive capacity
> of each well which may be produced daily during the
> following month from <u>each gas well</u> producing gas from
> such common reservoir in accordance with the factors
> set out in Article 6008 <u>when such allocation might
> result in the depriving of one or more persons of
> a market for the sale of gas which has already been
> obtained.</u>

> "In explanation of the last underscored lines
> is meant whether such allocation would reduce the
> volume of gas available from the common reservoir to
> the marketer of such gas and below the volume which
> he has contracted to deliver, keeping in mind that
> the volume which he is now selling to a bonafide
> market is less than the volume the Commission has
> found would produce physical waste.

"I respectfully ask that you furnish me your opinion at your very earliest convenience and, if possible, prior to December 16th when the Commission will hold its next statewide hearing."

As we understand your inquiry, you desire to know whether or not it is the duty of the Commission once it sets the total allowable for gas from a particular gas field producing sweet gas only, to allocate and apportion the total allowables among the various wells in the field in the manner set forth in Article 6008, Vernon's Annotated Civil Statutes, when the necessary effect of such apportionment as to a particular operator will be to deprive him (with the wells he currently has) of sufficient gas to fulfill previously existing contract commitments he has made.

Pertinent provisions of Article 6008 follow:

"Sec. 10.  It shall be the duty of the Commission to prorate and regulate the daily gas well production from each common reservoir in the manner and method herein set forth.  The Commission shall prorate and regulate such production for the protection of public and private interests:

"(a)  In the prevention of waste as 'waste' is defined herein.

"(b)  In the adjustment of correlative rights and opportunities of each owner of gas in a common reservoir to produce and use or sell such gas as permitted in this Article.

"Sec. 11.  The Commission shall exercise the authority to accomplish the purpose designated under item (a) of Section 10 when the presence or imminence of waste is supported by a finding based upon the evidence introduced at a hearing to be held as herein provided.

"The Commission shall exercise the authority to accomplish the purpose designated under item (b) of Section 10 when evidence introduced at a hearing to be held as herein provided will support a finding made by the Commission that the aggregate lawful volume of the open flow or daily potential capacity to produce of all gas wells located in a common reservoir, is in excess of the daily reasonable market demand for gas from gas wells that may be produced from such common reservoir, to be utilized as permitted in this Article.

"Sec. 12.   On or before the twentieth (20th) day of each calendar month the Commission shall hold a hearing after notice has been given, as provided by law, for the purpose of determining the aggregate daily capacity to produce of all gas wells in a common reservoir, and as nearly as possible, the daily volume of gas from each common reservoir that will be produced from gas wells during the following month to be utilized as permitted in this Article. Upon such determination, the Commission, based upon evidence introduced at such hearing, shall allocate to each gas well producing gas from such common reservoir a percentage of the daily productive capacity of each well which may be produced daily during the following month from each gas well producing gas from such common reservoir.   Such percentage of the daily producing capacity of each well shall be regarded as its daily allowable production of such daily volume required for utilization from such common reservoir. The daily allowable production of each gas well shall be computed and allocated as provided in Sections 13 and 14."

"Sec. 13.   In determining the daily allowable production for each gas well the Commission shall take into account the size of the tract segregated with respect to surface position and common ownership upon which such gas well or wells are located; the relation between the daily producing capacity of each gas well and the aggregate daily capacity of all gas wells producing the same kind of gas in the same common reservoir or zone; and all other factors which are pertinent; provided that the Commission shall not take into account the size of the tract upon which any gas well or wells are located in excess of the efficient drainage area of such well or wells, producing at twenty-five per cent (25%) of the daily productive capacity, which drainage area shall be determined by the Commission.   In ascertaining the drainage area of a well, the Commission shall take into account such factors as are reflected in the productive capacity of a gas well, including formation pressure, the permeability and porosity of the producing formation, and the well bore's structural position, together with all other factors taken into account by a reasonably prudent operator in determining the drainage area for a gas well.

"Sec. 14.   It shall be the duty of the Commission, after notice and hearing, to ascertain and

determine the reasonable market demand for gas from
gas wells to be used for light and fuel purposes and
for all other lawful purposes to which sweet gas may
be put under the terms of this Article and by proper
order to restrict the production of gas from all gas
wells in said field producing such gas to an amount
equal to market demand or to an amount which may be
produced without waste as otherwise defined; pro-
vided, however, the production of such gas shall in
any event be restricted to the amount of the reason-
able market demand therefor.  In such order the Com-
mission shall allocate, distribute or apportion the
total allowable production from such field among
the various gas wells affected by the order on a
reasonable basis, and as provided in Section 13.
It shall likewise be the duty of the Commission to
prorate the daily gas well production of sour gas
produced from each common reservoir of sour gas in
this State.  The hearing for such purpose shall be
held at the same time as the  hearing pertaining to
the proration of sweet gas well production.  The pro-
ration of sour gas well production shall be accom-
plished according to the manner and method herein
provided for the proration of sweet gas well pro-
duction.

"Sec. 15.  Nothing contained in this Article
shall require that the production from any gas well
with a daily natural open flow of two hundred thou-
sand (200,000) cubic feet of natural gas or more to
be restricted to a quantity less than fifty thousand
(50,000) cubic feet of natural gas daily; and nothing
herein shall require that the production from any gas
well with a daily natural open flow of less than two
hundred thousand (200,000) cubic feet of gas be re-
duced to a quantity less than twenty-five per cent
(25%) of its natural open flow. * * *

"Sec. 20.  In the event the Commission finds
that the owner of any gas well has failed or refused
to utilize or sell the allowable production from his
well when such owner has been offered a connection or
market for such gas at a reasonable price, such well
shall be excluded from consideration in allocating the
daily allowable production from the reservoir or zone
in which same is located until the owner thereof sign-
nifies to the Commission his desire to utilize or sell
such gas.  In all other cases all gas wells shall be
taken into account in allocating the allowable pro-
duction among wells producing the same type of gas."

You will note that under the provisions of Section
10 of Article 6008 it is made the _duty_ of the Commission to
prorate and regulate daily gas well production in the manner
set forth in the article.  The Legislature has declared that
the steps set forth are to be taken:

(a)  To prevent waste - when the presence or immin-
ence of waste is supported by a finding based upon the evidence
introduced at a hearing to be held as provided.  Section 11.
We pretermit any discussion of the power of the Commission to
act to prevent waste, since we understand that the total mar-
ket demand for the field is less than the amount the Commis-
sion has found may be produced without waste.

(b)  To adjust correlative rights and opportunities
of the various owners of gas in the reservoir.  The Commission
is to adjust these correlative rights and opportunities when
the evidence introduced at the hearing required by Article
6008 will support a finding that the aggregate lawful volume
of the open flow or daily potential capacity to produce of
all gas wells located in a common reservoir, is in excess of
the daily reasonable market demand.  Section 11.

The mechanics for the Commission to follow in exer-
cising the duties previously expressed are set forth in Sec-
tions 12 and 13.  Section 12 requires the Commission to hold
a hearing on or before the twentieth day of each month.  The
purpose of the hearing is to determine:

(a)  The aggregate daily capacity to produce of all
gas wells in the common reservoir.  In this connection, we
call your attention to the provisions of Section 8 whereby it
is made the duty of all operators to determine during the
months of January and July of each year the open flow and rock
pressure of each of their gas wells, and to file verified re-
ports thereof with the Commission on or before the tenth days
of those months.

(b)  The Commission is also required to determine
as nearly as possible the daily volume of gas from each com-
mon reservoir that will be produced from gas wells during the
month to follow to be utilized for the lawful purposes for
which gas may be used as set forth in Section 7 of Article
6008.  This requirement is reiterated in Section 14 wherein
the Commission is required to ascertain each month the reason-
able market demand for gas to be used for light and fuel and
all other lawful purposes.  Having made this finding, _it is
then the duty of the Commission to restrict the production
of gas from all gas wells to an amount equal to market demand;
or if only a lesser amount may be produced without causing
waste, then to an amount that may be produced without waste._

When the Commission has heard evidence and made its determination, it is then required to allocate to each gas well producing gas from such common reservoir, a percentage of its daily productive capacity, which will also be a percentage of the total reasonable market demand for the field. This is the well's allowable for the month to follow. The Commission may not assign an arbitrary percentage to each well. It is required to take into consideration the factors and follow the formula set forth in Section 13. Moreover, if after an allowable has been thus assigned each well, it is found that any individual owner has failed or refused to utilize or sell the allowable production from his wells when he has been offered a connection or market at a reasonable price, the wells of that operator are thereafter to be excluded from consideration in allocating the total daily allowable production from the reservoir until the operator signifies his desire to sell or utilize such gas. Section 20. We do not understand this section to be involved under the facts submitted.

Thus you will note that Article 6008 not only authorizes but specifically requires the Commission to allocate or apportion the total market demand for a sweet gas field among the various wells for the purpose of adjusting the correlative rights and opportunities of the various owners. Article 6008 provides no exception for instances occasioned when an operator has contracted to sell more gas than his allowable or apportionment.

We offer the following qualification to the foregoing. Under the provisions of Section 15 of Article 6008, the Commission is not required to restrict any gas well having a daily natural open flow of two hundred thousand (200,000) cubic feet of natural gas or more to a quantity less than fifty thousand (50,000) cubic feet of natural gas daily; nor is the Commission required to reduce the allowable of a well having a daily natural open flow of less than two hundred thousand (200,000) cubic feet to a quantity less than twenty-five per cent of its natural open flow.

It follows then that it is our opinion, and you are so advised, that if the Commission finds at its next monthly hearing that the total reasonable market demand for the field in question is less than an amount which may be produced without waste, and that undue drainage is taking place from one well or wells within the field to another well or wells therein it will be the duty of the Commission to apportion the total market demand among the various wells in the field so as to prevent, if possible, such undue drainage.

Further, it is our opinion that the Commission has this duty to perform even though as to an individual operator the apportionment received is less than his contract commitments. All contracts are made subject to a valid exercise of the police power. In view of the fact that the Commission is required to pass upon the reasonable market demand for a field and its proper apportionment among the operators, monthly, the parties to the contract in question must have contemplated that the operator's apportionment was subject to fluctuation. Moreover, no operator could lawfully sell more gas than he owns (more than his reasonable share in the common reservoir) and thereby bind the Commission to fix his allowable in accordance with contract commitments. Gillespie v. Railroad Commission, 161 S.W. (2d) 159.

We presume that the question as to your duty and authority under Article 6008 arises from the language used by the Court in Thompson v. Consolidated Gas Company, 300 U. S. 55, 81 L. Ed. 510.

The Consolidated case held invalid a gas proration order of the Commission prorating gas in the Panhandle fields and allocating the total among the various operators.

The Supreme Court set forth the specific findings of the trial court to the effect that the order was not intended to prevent waste; or to adjust correlative rights in the common reservoir for the purpose of averting unjust drainage from the reserves of those lacking pipe line connections. The Court further held that these findings were adequately supported by the evidence.

The Court thereupon concluded that an order entered by the Commission for the sole purpose of compelling those who have market outlets to purchase gas from others having no connections is lawful saying that the law reports "present no more glaring instance of the taking of one man's property and giving it to another."

However, Mr. Justice Brandeis was careful to point out in his opinion that the order was not entered to prevent undue drainage and that:

"We assume also that the State may constitutionally prorate production in order to prevent undue drainage of gas from the reserves of well owners lacking pipe line connections."

Our interpretation of the Consolidated case is that the Railroad Commission may legally apportion gas between wells if it has found either that waste or drainage is taking place. Such interpretation is strengthened by the interpretation accorded the Consolidated case by Judge Hutcheson, speaking for the statutory three-judge Federal Court in Henderson v. Terrell. 24 Fed. Sup. 147. There the statute and the order entered pursuant thereto was attacked as being a restriction on plaintiffs' production, although plaintiffs were producing without waste, in order to compel plaintiffs to share the market for their gas with owners and operators of wells having no market. The Court differentiated the facts in the Consolidated case with the facts in the Henderson case in this language:

"Indeed, the takings from those wells had been far in excess of the amount of gas which had originally underlain the structure there, but notwithstanding this, there had been such rapid and heavy migration into the low pressure area, caused by the heavy production of plaintiffs' and others in that area, that there was still nearly as much gas under plaintiffs' lands as had originally been there.

"The proof thus demonstrated beyond peradventure, that in restricting plaintiffs' production in the future, the orders did not operate injuriously as to them, as the orders entered in Consolidated Case, had operated in subjecting the plaintiffs' properties there to a continuance of the drainage they had already undergone."

The Court concluded as to the order and statute:

"We see nothing in the provision at all violative of due process. We see in it only a reasonable, indeed, almost a necessary exercise of the police power to protect owners of wells, whose unrestricted right of capture the statute has lawfully invaded, in order to protect the gas reserves from dissipation in inferior uses, form having their gas drained away by the disproportionate takings, form the reservoir, of their owners."

It is our opinion, therefore, that the Commission is required to perform the duties prescribed by Article 6008 if it has found conditions of waste or undue drainage to exist.

                               Yours very truly

                          ATTORNEY GENERAL OF TEXAS


                               By s/ Lloyd Armstrong
                                  Lloyd Armstrong
                                     Assistant

LA:EP


APPROVED DEC 17, 1942
S/Gerald C. Mann
ATTORNEY GENERAL OF TEXAS